# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MARYANN H.,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 20-2520** |
| **v.** | * | |
| | * | |
| | * | |
| **KILOLO KIJAKAZI,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.**[1] | * | |

*************

## MEMORANDUM OPINION GRANTING PLAINTIFF'S
## ALTERNATIVE MOTION FOR REMAND

Plaintiff Maryann H. seeks judicial review under 42 U.S.C. § 405(g) of a final decision of

the Acting Commissioner of Social Security ("Defendant" or the "Commissioner") denying her

application for disability insurance benefits ("DIB") under Title II of the Social Security Act.

Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for

remand (ECF No. 12) and Defendant's Motion for Summary Judgment (ECF No. 15).[2]  Plaintiff

contends that the administrative record does not contain substantial evidence to support the

Commissioner's decision that she is not disabled.  No hearing is necessary.  L.R. 105.6.  For the

reasons that follow, Plaintiff's alternative motion for remand (ECF No. 12) is **GRANTED**.

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security.  She is, therefore, substituted as Defendant in this matter.  *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff protectively filed an application for DIB on June 8, 2016, alleging disability beginning on July 3, 2014.  R. at 14.  After the Commissioner denied Plaintiff's claim initially and on reconsideration, she requested a hearing.  R. at 14.  On March 4, 2019, Administrative Law Judge ("ALJ") Andrew M. Emerson held a hearing where Plaintiff and a vocational expert ("VE") testified.  R. at 32-70.  The ALJ thereafter found on May 22, 2019, that Plaintiff was not disabled from July 3, 2014, through the date of the ALJ's decision.  R. at 11-31.  In so finding, the ALJ found that Plaintiff had not engaged in substantial, gainful activity since July 3, 2014, and that she had severe impairments.  R. at 17.  She did not, however, have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  R. at 17-19.  In comparing the severity of Plaintiff's mental impairments to the listed impairments, the ALJ found that Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace.  R. at 18-19.

The ALJ then found that Plaintiff had the residual functional capacity ("RFC")

> to perform medium work as defined in 20 CFR 404.1567(c) except she could only frequently climb ramps and stairs, stoop, kneel, balance, crawl, and crouch, and never climb ladders, ropes, or scaffolds.  She should also avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, hazards like moving machinery and unprotected heights, chemicals and pulmonary irritants like fumes, odors, dusts, gases, and poor ventilation.  [Plaintiff] is limited to performing simple, routine, repetitive tasks in a low stress work environment with low stress defined as no strict production quotas, and occasionally interact with the public, coworkers, and supervisors[.]

R. at 19.[3]  In light of this RFC and the VE's testimony, the ALJ found that, although Plaintiff

could not perform her past relevant work as an administrative clerk, she could perform other

work in the national economy, such as a dining-room attendant or kitchen helper.  R. at 23-24.

The ALJ thus found that Plaintiff was not disabled from July 3, 2014, through May 22, 2019.  R.

at 25.

After the Appeals Council denied Plaintiff's request for review, Plaintiff filed on August

31, 2020, a complaint in this Court seeking review of the Commissioner's decision.  Upon the

parties' consent, this case was transferred to a United States Magistrate Judge for final

disposition and entry of judgment.  The case then was reassigned to the undersigned.  The parties

have briefed the issues, and the matter is now fully submitted.

**II**

**Disability Determinations and Burden of Proof**

The Social Security Act defines a disability as the inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment that can

be expected to result in death or that has lasted or can be expected to last for a continuous period

of not less than twelve months.    42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R.

§§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists . . . in significant numbers either in the

region where such individual lives or in several regions of the country."    42 U.S.C.

§§ 423(d)(2)(A), 1382c(a)(3)(B).

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or
carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

3

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003).  "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further."  *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of production and proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1522(a), 416.920(c), 416.922(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled,

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1522(b), 416.922(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* §§ 404.1522(b)(1)-(6), 416.922(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

regardless of age, education, and work experience.   20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).   RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id.*  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.  *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the

national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III

### Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v.*

*Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  When conflicting evidence allows reasonable minds to

differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ.

*Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

**IV**

**Discussion**

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security

Ruling[5] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).  Pl.'s Mem. Supp. Mot. Summ. J. 3-20,

ECF No. 12-1.  Plaintiff maintains that the ALJ failed to perform properly a function-by-function

assessment of her ability to perform the physical and mental demands of work.  *Id.* at 5.  In

particular, she argues that the ALJ "failed to provide any explanation of what he meant by the

term 'strict production quotas'" and failed to include any limitation on concentration or task

persistence in his RFC assessment.  *Id.* at 6, 9.  According to Plaintiff, the ALJ also failed to

explain how he determined that an individual with moderate limitations in concentrating,

persisting, or maintaining pace would be capable of maintaining concentration, attention, and

pace for 90% of the workday.  *Id.* at 8.  Plaintiff further argues that the ALJ failed to perform a

function-by-function assessment of her work-related abilities and "instead simply concluded that

[she] was capable of performing medium work."  *Id.* at 10.  Plaintiff then contends that the ALJ

failed to evaluate properly the opinions of Stephanie Park, Ph.D., her treating psychiatrist.  *Id.* at

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding on all components of the Social Security Administration.  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1).  "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law."  *Pass*, 65 F.3d at 1204 n.3.

12-20.  Plaintiff finally asserts that the ALJ erroneously evaluated her subjective complaints.  *Id.*

at 20-23.  For the reasons discussed below, the Court remands this case for further proceedings.

SSR 96-8p, 1996 WL 374184 (July 2, 1996), explains how adjudicators should assess

RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or
> restrictions and assess his or her work-related abilities on a function-by-function
> basis, including the functions" listed in the regulations.  "Only after that may
> [residual functional capacity] be expressed in terms of the exertional levels of
> work, sedentary, light, medium, heavy, and very heavy."  The Ruling further
> explains that the residual functional capacity "assessment must include a narrative
> discussion describing how the evidence supports each conclusion, citing specific
> medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily
> activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote and

citations omitted).  The Fourth Circuit has held, however, that a per se rule requiring remand

when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given

that remand would prove futile in cases where the ALJ does not discuss functions that are

'irrelevant or uncontested.'"  *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)

(per curiam)).  Rather, remand may be appropriate "where an ALJ fails to assess a claimant's

capacity to perform relevant functions, despite contradictory evidence in the record, or where

other inadequacies in the ALJ's analysis frustrate meaningful review."  *Id.* (quoting *Cichocki*,

729 F.3d at 177).  The court in *Mascio* concluded that remand was appropriate because it was

"left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform

relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform

them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did

not address.  *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding

because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ

erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

The Fourth Circuit further held in *Mascio* that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). "[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC. *Id.* The Fourth Circuit, however, "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). Rather, when "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Id.* (quoting *Winschel*, 631 F.3d at 1180).

Plaintiff argues that the ALJ "failed to include any limitation on concentration or task persistence in his [RFC] assessment, and instead limited [her] to the performance of simple, routine, and repetitive tasks in a low-stress work environment, defined as no strict production quotas." Pl.'s Mem. Supp. Mot. Summ. J. 9, ECF No. 12-1 (citing R. at 19). Plaintiff's contention is unavailing, however, as the ALJ included a specific limitation ("no strict production quotas") in his RFC assessment and hypothetical question to the VE that addresses

persistence or pace (R. at 19, 65).  *See Kenneth L. v. Kijakazi*, Civil No. SAG-20-624, 2021 WL

4198408, at *2 (D. Md. Sept. 15, 2021) (Gallagher, J.) (finding that ALJ's RFC assessment

limiting claimant to "a low-stress work environment with no strict production quotas" satisfied

*Mascio*'s requirements).  Moreover, "'no strict production quotas' contains terms that are subject

to common understanding," as "[t]he term in this case plainly relates to the rigidity of the

occupations' production requirements—whatever those requirements may be."  *Id.*  Thus, the

inclusion of this term in the ALJ's RFC assessment does not frustrate meaningful review.  *See id.*

Remand is warranted, however, because the ALJ did not explain how, despite Plaintiff's

moderate limitation in concentrating, persisting, or maintaining pace, she could be productive at

least 90% of the time in an eight-hour workday (Pl.'s Mem. Supp. Mot. Summ. J. 8, ECF No. 12-

1).  *See Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017) (remanding because, *inter alia*,

ALJ did not build accurate and logical bridge between claimant's moderate difficulties in various

functional areas and ALJ's finding that claimant would not be off task more than 10% of

workday); *Sheri S. v. Saul*, No. 1:19-cv-01924-GLS, 2020 WL 4579871, at *5-6 (D. Md. Aug. 7,

2020); *McLaughlin v. Colvin*, 200 F. Supp. 3d 591, 602-03 (D. Md. 2016) (remanding because

ALJ's decision failed to explain how, despite claimant's moderate difficulties in maintaining

concentration, persistence, or pace, she could remain productive for at least 85% of workday, in

light of VE's testimony that individual "off task" more than 15% of workday because of need to

take unscheduled breaks could not perform any work).  The VE testified that "anything above

and beyond ten percent off task would eliminate competitive employment."  R. at 67.  The VE

also testified that the tolerance for unplanned absences in the workplace was "somewhere

between eight and nine" days in a year on average.  R. at 67.  "But the ALJ failed to incorporate

this opinion anywhere in the RFC, leaving the RFC altogether uninformed by considerations of

off-task time or unplanned leave." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *see James B. v. Kijakazi*, Civil No. DLB-20-1243, 2021 WL 3912279, at *4 (D. Md. Sept. 1, 2021) (Boardman, J.).   "On remand, the ALJ should provide a clearer narrative discussion that incorporates the VE's testimony and Plaintiff's ability to stay on task, and also explains how the evidence supports his conclusions, ensuring that there is an accurate and logical bridge from the evidence to any conclusion made." *Sheri S.*, 2020 WL 4579871, at *6.

Plaintiff next asserts that the ALJ failed to evaluate properly the opinions of Dr. Park, her treating psychiatrist.  Pl.'s Mem. Supp. Mot. Summ. J. 12-20, ECF No. 12-1.

> For claims—like [Plaintiff's]—filed before March 27, 2017, the standards for evaluating medical opinion evidence are set forth in 20 C.F.R. § 404.1527. That regulation defines "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  For purposes of the regulation, an "acceptable medical source" includes a licensed physician or psychologist.  The regulation provides that the ALJ "will evaluate every medical opinion" presented to him, "[r]egardless of its source."  Generally, however, more weight is given "to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."

*Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 255 (4th Cir. 2017) (alteration in original) (citations omitted).

> Section 404.1527(c)(2) sets out two rules an ALJ must follow when evaluating a medical opinion from a treating physician.  First, it establishes the "treating physician rule," under which the medical opinion of a treating physician is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  Second, if a medical opinion is not entitled to controlling weight under the treating physician rule, an ALJ must consider each of the following factors to determine the weight the opinion should be afforded: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of the treatment relationship"; (3) "[s]upportability," i.e., the extent to which the treating physician "presents relevant evidence to support [the] medical opinion"; (4) "[c]onsistency," i.e., the extent to which the opinion is consistent with the evidence in the record; (5) the

extent to which the treating physician is a specialist opining as to "issues related to his or her area of specialty"; and (6) any other factors raised by the parties "which tend to support or contradict the medical opinion."

*Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 384-85 (4th Cir. 2021) (alterations in original) (citations omitted); *see* 20 C.F.R. § 404.1527(c)(2)(i)-(6).   While "an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he meaningfully considered *each* of the factors before deciding how much weight to give the opinion." *Dowling*, 986 F.3d at 385.

Here, the ALJ stated that he had considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527.  R. at 20.  However, even if Dr. Park's opinions were not entitled to controlling weight, it does not appear that the ALJ meaningfully considered each of the factors under § 404.1527(c) before deciding how much weight to give her opinions.  *See Dowling*, 986 F.3d at 385; *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 107 n.16 (4th Cir. 2020).   Although it seems that the ALJ considered the consistency of Dr. Park's opinions with the record as a whole and their supportability (R. at 22), the ALJ apparently did not consider the length, nature, and extent of Dr. Park's treatment relationship; the frequency of the doctor's examination of Plaintiff; the doctor's specialization; and other factors under 20 C.F.R. § 404.1527(c)(6), such as Dr. Park's understanding of disability programs and their evidentiary requirements and the extent of her familiarity with the other information in Plaintiff's case record.   The ALJ "never so much as hinted that his discretion was checked by the factors enumerated in Section 404.1527(c), which it is.   In failing to acknowledge and apply each of these six factors, the ALJ erred." *Dowling*, 986 F.3d 385-86.  Remand is thus warranted also for these reasons.  *See id.* at 386 ("Two of the factors ignored by the ALJ -- those which relate to the

length, frequency, nature, and extent of [the claimant's] treatment relationship with [her treating physician] -- appear to cut in [the claimant's] favor. . . . Had the ALJ properly considered the treatment relationship between [the treating physician] and [the claimant], he may not have been so quick to reject [the treating physician's] medical opinion.  This is significant, because if the ALJ had accorded greater weight to [the treating physician's] opinion that [the claimant] was incapable of sitting for even two hours total in an eight-hour working day and that she frequently experienced pain so severe that it interfered with her attention and concentration, this reasonably could have altered the ALJ's conclusion that [the claimant] was capable of performing sedentary work.").

In addition, "[t]he failure to consider each of the 20 C.F.R. § 404.1527(c) factors was not the only error committed by the ALJ.  The ALJ was also required to assess [Plaintiff's] RFC when determining her disability status." *Id.*  The ALJ stated that, in assessing Plaintiff's RFC, he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." R. at 20.  As noted above, every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by a narrative discussion describing the evidence that supports it.  *Dowling*, 986 F.3d at 387.  Here, although the ALJ acknowledged 20 C.F.R. § 404.1545 and SSR 96-8p (R. at 16), "the ALJ did not indicate that his RFC assessment was rooted in a function-by-function analysis of how [Plaintiff's] impairments impacted her ability to work." *Id.*  Rather, the ALJ's RFC assessment was based on SSR 16-3p, which sets out the process ALJs use to evaluate the intensity and persistence of a claimant's symptoms and to determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in

the record. *See id.* (citing SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017)). "Of course, a claimant's symptoms, and the extent to which the alleged severity of those symptoms is supported by the record, is relevant to the RFC evaluation." *Id.* (citing 20 C.F.R. § 416.945(a)(3)). "But an RFC assessment is a separate and distinct inquiry from a symptom evaluation, and the ALJ erred by treating them as one and the same." *Id.*

"The ALJ's reliance on an incorrect regulatory framework led to an erroneous RFC assessment" that requires the Court to remand this case. *Id.* at 388. "[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). The ALJ in this case, however, "began with step three, noting at the outset of his RFC evaluation that [Plaintiff] only '[has] the residual functional capacity to perform [medium] work'" (R. at 19). *Dowling*, 986 F.3d at 388. "Only then did the ALJ identify evidence and attempt to explain how that evidence logically supported his predetermined conclusion" (R. at 20-23). *Id.* The ALJ thus erred in stating Plaintiff's RFC first and then concluding that the limitations caused by her impairments were consistent with that RFC. *See Thomas*, 916 F.3d at 312; *Monroe*, 826 F.3d at 188. Although the Fourth Circuit has declined to impose a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis, "the lack of a rule *requiring* remand does not mean that remand is never the appropriate outcome when an ALJ fails to engage in a function-by-function analysis." *Dowling*, 986 F.3d at 388. The Court finds that remand is also appropriate here because of the ALJ's failure to engage in a function-by-function analysis. *See Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("The ALJ concluded that [the claimant] could perform 'medium work' and summarized evidence that he found credible, useful, and consistent. But the ALJ never explained how he concluded—*based on this evidence*—that [the claimant] could actually

perform the tasks required by 'medium work,' such as lifting up to 50 pounds at a time, frequently lifting or carrying up to 25 pounds, or standing or walking for six hours." (citing SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983))).

Because the Court remands this case on other grounds, the Court need not address Plaintiff's remaining argument regarding the ALJ's evaluation of her subjective complaints.  *See Testamark v. Berryhill*, 736 F. App'x 395, 399 n.2 (4th Cir. 2018) (per curiam).  In any event, the ALJ on remand "may not consider the *type* of activities [Plaintiff] can perform without also considering the *extent* to which she can perform them."  *Woods*, 888 F.3d at 694.

In short, the ALJ "must *both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge from [that] evidence to his conclusion.'"  *Id.* (alteration in original) (quoting *Monroe*, 826 F.3d at 189).  An ALJ's failure to do so constitutes reversible error.  *Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017).  The Court thus remands this case for further proceedings.

## V

### Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 15) is **DENIED**.  Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**.  Plaintiff's alternative motion for remand (ECF No. 12) is **GRANTED**.  Defendant's final decision is **REVERSED** under the fourth sentence of 42 U.S.C. § 405(g).  This matter is **REMANDED** for further proceedings consistent with this opinion.  A separate order will issue.

Date: November 10, 2021

_____/s/_____
Thomas M. DiGirolamo
United States Magistrate Judge